*Ree. 20. Barb. 459.*

## LUDLOW *vs.* THE NEW-YORK AND HARLEM RAILROAD COMPANY.

The effect of a deed of land, which contains a condition subsequent, is, to vest the fee simple of the estate in the grantee, subject to be defeated by his omission to perform the condition.

But the neglect to perform the condition, does not, *ipso facto*, determine the estate, but only exposes it to be defeated and determined at the election of the grantor, and (in case of his death) his heirs, to be signified by some act equivalent to a re-entry at the common law.

When the estate has, *ipso facto*, ceased, by operation of the condition, it can not be revived without a new grant; but a voidable estate may be confirmed and the condition dispensed with.

Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates.

Cases of forfeiture are not favored in law, and where the forfeiture is once waived, the court will not assist it.

The defendants obtained from the plaintiff, a deed in fee, of a strip of land, for the extension of their railroad: they covenanted to make and maintain the fences, &c.; and the deed was to cease and be void, unless the railroad was completed through the premises granted, on or before a certain day therein named. The road was not completed at the time specified, but the plaintiff made no effort to assert his right to the estate, or to do any act equivalent to an entry at the common law, until two years after the forfeiture had occurred. During that time, he saw the defendants making large expenditures over the premises in question; he gave them notice to make the fences, which they did accordingly, about a year before the suit was commenced; he traveled over the road himself, &c. *Held,* That no stronger evidence could be exhibited, short of the execution and delivery of a new deed, of a design to waive the forfeiture, and confirm the grant, than these facts; and that the plaintiff could not, therefore, recover the premises, in an action of ejectment.

THIS was an action of ejectment, brought to recover the possession of a strip of land, situated in the town of Greenburgh, in the county of Westchester, and occupied by the defendants in the extension of their railroad from Harlem river, through the county of Westchester. Issue was joined, and it was referred to Hon. Albert Lockwood, county judge of the county of Westchester, as sole referee; and came on for trial, before him, on the 12th March, 1849. The plaintiff proved his possession of a farm, of which the premises in question were parcel, and

showed title thereto, under a chain of uninterrupted conveyances, commencing November 2d, 1832. He also proved that the railroad of the defendants was not completed through his land on the 1st of January, 1843. The defendants gave in evidence a deed to them, from the plaintiff, bearing date the 16th of November, 1841, conveying the premises in question, but containing certain reservations, and upon a condition that the same should be void unless the railroad was completed through the premises on or before the first day of January, 1843. The other facts given in evidence, and which appeared to the court of any importance, are sufficiently stated in their opinion. On the 2d July, 1849, the referee reported, that the defendants were not guilty of the premises, and were not guilty of withholding the lands described in the pleadings in this cause, or any part thereof. The plaintiff moved to set aside this report.

*Samuel E. Lyon,* for the plaintiff.

*William Silliman,* for the defendants.

*By the Court,* BROWN, J. This is an action of ejectment for lands in Greenburgh, county of Westchester, and comes before this court on a motion to set aside the report of Albert Lockwood, the referee, who found the defendants not guilty of withholding the lands mentioned in the pleadings. I propose to examine but one of the questions discussed upon the argument: and that is the legal effect of the plaintiff's deed to the defendants, considered in connection with the evidence given upon the hearing. This deed bears date November the 16th, 1841, and grants to the defendants the premises, in fee simple, with a reservation of the wood and timber; habendum to the grantee, for the purpose of the extension of the New-York and Harlem railroad, as directed in the several acts of the legislature of the state of New-York in relation thereto, and with a condition in these words : " This conveyance to cease and be void, unless the said railroad is completed through the above described piece of land, on or before the first day of January, A. D. 1843." The

deed also contained a covenant by the defendants, to make and maintain, at all times, at its own expense, the partition fences between the lands conveyed and the adjoining lands of the plaintiff. The company entered under the deed, but did not comply with the condition, and did not complete the road over the premises in dispute, until the 25th September, 1844. The action was commenced on the 22d October, 1846. No attempt was made by the plaintiff to enter for the condition broken, or to assert his right to the possession, until the 9th of September, 1846, when he gave the company written notice to quit, and demanded the possession. The proof showed that the road was completed and the cars put in operation to the village of White Plains, a place north of, and beyond the lands claimed, in the autumn of 1844. In the intermediate period, the plaintiff saw the defendants proceed at great expense with the construction of the road, without objection, or any intimation of his design to insist upon the breach of the condition. He used the road himself, and occasionally traveled in the company's cars, over the premises in dispute, up to the time of the commencement of his action. It was also in evidence that at the time of the hearing before the referee, the track had been finished, at the expense of $20,000 a mile, and the company's cars were running to Dover Plains, a distance of some 52 miles north of White Plains. The facts mentioned were not controverted, and taken in connection with the condition in the deed, exhibit the grounds upon which the referee decided against the claim of the plaintiff.

The deed contains one of those conditions known to the law as conditions subsequent. Its effect was to vest the fee simple of the estate in the defendants, subject to be defeated by their omission to complete the road over the lands granted, within the time specified. The neglect to perform the condition did not, *ipso facto*, determine the estate; but only exposed it to be defeated and determined at the election of the grantor and his heirs, to be signified by some act equivalent to a re-entry at the common law. "Where a condition must be performed before the estate can commence, it is called a condition precedent. But when the effect of the condition is, either to enlarge or to defeat

an estate already created, it is then called a condition subsequent." (*Cruise's Dig. tit.* 13, *ch.* 1, § 6.)  "A diversitie is to be understood between conditions that are to create an estate, and conditions that are to destroy an estate : for here it appeareth, that the condition that is to create an estate, is to be performed by construction of law, as neere the condition as may be, and according to the entent and meaning of the condition, albeit the letter and words of the condition can not be performed : but otherwise it is of a condition that destroyeth an estate, for that is to be taken strictly, unless it be in certaine speciall cases." (1 *Institute, Co. Litt.* 219, *b.*)  It is of consequence to bear in mind the distinction between conditions subsequent annexed to an estate in fee, and the like conditions annexed to an estate for years.  In the former, the only mode by which advantage can be taken of a breach is by entry, or if that should be impossible, by claim ; because the solemnity of a feoffment with livery of seisin, at the common law, could only be defeated by an act of equal notoriety.  (1 *Inst.* 218, *a.*)  Where an estate for years determines, upon a breach of condition, no entry is necessary ; because an estate for years did not pass by livery of seisin, which, Mr. Blackstone. says, was the solemnity appropriated only to the conveyance of a freehold.   Whenever, therefore, an estate for years was dependent upon the performance of a condition subsequent, the moment the condition was broken, the estate of the lessee terminated without an entry.   A result, as we have seen, which did not follow where the condition was annexed to an estate in fee.   " Words of *limitation*," says Chancellor Kent, (4 *Kent's Com.* 126,) " mark the period which determines the estate : but words of *condition* render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arise before the determination of the estate, or completion of the period prescribed by the limitation. The one specifies the utmost time of continuance, and the other marks some èvent, which, if it takes place in the course of that time, will defeat the estate.   The material distinction between a condition and a limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the

grantor or his heirs." · In *Smith* v. *The Saratoga County Mutual Fire Ins. Co.* (3 *Hill*, 508,) to which we are referred by the counsel for the plaintiff, Mr. Justice Bronson notices the distinction. "between cases where the landlord may put an end to the lease by an entry for the wrong done, and those where the wrong terminates the lease without any act on the part of the landlord." And he quotes numerous adjudged cases in confirmation of his opinion. In the one class the estate is voidable, and continues in the lessee, until the lessor evinces his intention to insist upon the forfeiture, and resume his former estate. And in the other class, the estate and interest of the lessee who has done the wrong, is absolutely void. We have already seen the reason why a re-entry was necessary to terminate an estate of freehold dependent upon a condition subsequent, and not necessary to terminate an estate for years, dependent upon a like condition; and that it was a consequence of the manner in which estates were passed at the common law. I am thus particular to notice the distinction between estates voidable, and estates absolutely void, not for the purpose of showing that the plaintiff in this case was bound to make an actual re-entry, before he could maintain his action, but with the sole object of exhibiting the real character of the estate which the defendant had under the deed.

"Where the estate has, *ipso facto*, ceased, by operation of the condition, it can not be revived without a new grant; but a voidable estate may be confirmed, and the condition dispensed with." "Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates; and the rigorous execution of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience." (4 *Kent's Com.* 128, 129.) "In cases of conditions *subsequent*, it has been established by precedents, that where the estate is not given over, they shall be considered as *only in terrorem*. This shows how odious such conditions are: for, in reason and argument, the distinction between being or not being limited over, is very nice; and a clause can carry very little terror, which is adjudged to be of no effect." "If the estate is given over, such

a condition can not be got over." (*Per Lord Mansfield in Long* v. *Dennis*, 4 *Burr.* 2052.) "To construe this acceptance of rent *due* since *the condition broken*, a *waiver* of the forfeiture, is to construe it according to the intention of the parties. Upon the breach of the condition, the landlord had a right to enter. He had full notice of the breach, and does not take advantage of it; but accepts rent subsequently accrued. That shows he meant the lease should continue. Cases of forfeiture are not favored in law; and where the forfeiture is once waived, the court will not assist it." (*Per Lord Mansfield in Goodright* v. *Davids, Cowper*, 803.) In *Clark* v. *Jones*, (1 *Denio*, 516,) Chief Justice Bronson, upon authority, carried the rule still further. He denied the right of a tenant to take advantage of his own wrong and terminate the lease by an omission to pay the rent. "Where," says he, "there is a condition in a lease that upon the neglect of the tenant to pay rent, or for some other default or improper conduct, on his part, the lease shall *cease and determine*, or shall become *null and void*, the neglect to pay rent, or the like, does not render the lease absolutely void. It is void as to the estate of the lessee, who has done the wrong. But as to the lessor, the lease is voidable only. He may dispense with the forfeiture, and affirm the continuance of the lease."

Did the grantor in the case under consideration manifest an intention not to insist upon a breach of the condition and dispense with the forfeiture? Was his conduct such as to induce and encourage the company to expend its money and proceed with the construction of the road after he knew that the forfeiture had occurred? The referee found that he did. The facts which are the evidence of this design, are not in dispute; and leave no room for doubt as to their real tendency. He made no effort to assert his right to the estate, or to do any act equivalent to an entry at the common law, until two years after the forfeiture had occurred. During this time he saw the company making large expenditures over the premises in question, and extending the road at an enormous expense towards its northern terminus. He traveled over the road himself and well knew

that when the line was broken and interrupted by the dispossession of the company from the premises claimed, the entire road would be in a measure useless, until the disjointed parts should be re-united by some new connection. He gave the company notice to perform the covenant in the deed in regard to the division fences, and the covenant was executed, and the fences erected accordingly, about a year before the suit was commenced; thus recognizing, that in respect to the premises, himself and the company were the owners of adjoining lands. No stronger evidence could be exhibited—short of the execution and delivery of a new deed—of a design to waive the forfeiture, and confirm the grant, than the facts to which I have adverted; and we but follow in the path of precedent decisions in like cases, when we determine that the plaintiff ought not to recover.

The motion to set aside the report, is denied.

[DUTCHESS GENERAL TERM, January 5, 1852. *Morse, Barculo* and *Brown,* Justices.]