MARIA BREDELL et al., Appellants, v. DAVID R.
    KERR and BOARD OF TRUSTEES OF WEST-
    MINSTER COLLEGE.

**In Banc, May 7, 1912.**

1. **TRUST: Resignation of Trustee: Collateral Attack.** A court
   of equity has jurisdiction to appoint a trustee in case of a
   vacancy caused by the resignation of a prior one, to take title
   to the property and administer the trust; and its action in that
   behalf cannot be attacked collaterally, but must stand until
   reversed or overruled in the proper tribunal.

2. ————: ————: **Judgment: Aided by Deed.** Where the
   owner of property conveyed it to a trustee (a corporation
   raised up for that purpose) upon two subsequent conditions,
   namely, (1) that the trustee should permit the trustees of
   Westminster College to use, occupy and control the property
   for the educational purposes of the college and not otherwise
   and (2) that the property should not be sold except the sale
   be ordered by the circuit court and the proceeds reinvested
   upon like conditions, with rights of reentry by the grantor and

his heirs upon breach of the conditions, a resignation by the trustee and the appointment of another by the court was but the transferrence of the title from the one trustee to the other; and the conveyance of the property by the former trustee to the appointee, in pursuance to the decree of the court, did not constitute a sale or an incumbrance, and said conveyance was unnecessary, since the appointment of the trustee transferred the title and there was no change in the uses to which the property could be put.

3. ————: **Forfeiture: Estoppel.** In case of a breach of a condition subsequent inserted in a conveyance of property for educational purposes the title does not *ipso facto* revert to the grantor, but remains in the grantee until by reentry or some act equivalent thereto the grantor asserts his rights arising from the forfeiture; and no such forfeiture 'will be declared unless the grantor brings an action within reasonable time. Where the property was conveyed to a trustee to be held for the educational purposes of a college and was not to be sold, and the trustee conveyed it to the college, and the college building was burned, and the grantor, knowing that fact, waited for fifteen months before bringing his suit, while the college erected another building at a cost of $75,000, soliciting and receiving donations for the purpose, in the belief that it was the owner of the property, the grantor's suit in ejectment and to have a forfeiture declared was barred by estoppel.

Appeal from Cole Circuit Court.—*Hon. John M. Williams,* Judge.

AFFIRMED.

*Charles Lyons* and *Alexander Graves* for appellants.

()   The decree and the deed pursuant thereto in the suit of the Board of Trust against Board of Trustees of Westminster College, October term of circuit court, does not affect the rights of these respondents, they being neither parties to the record, nor privies. Sampson v. Mitchell, 125 Mo. 229; Barton v. Walker, 165 Mo. 32; Grimes v. Miller, 221 Mo. 643; Freeman on Judgments (4 Ed.), sec. 154.   (2)   The action of the said Board of Trust and of the Board of Trustees of Westminster College as shown by the pleadings in

said equity suit in executing the deed under the decree in said suit, considered with all the documentary evidence in this case, operates a forfeiture by reason of the breach of conditions subsequent contained in the deed of Edward Bredell, conveying the property involved to the Board of Trust. Stevens v. De La Vaulx, 166 Mo. 26; Stewart v. Jones, 219 Mo. 637; Gilman v. Hamilton, 16 Ill. 230; State ex rel. v. Pittman, 44 Mo. 576; Bryan v. Board, 151 U. S. 656; State ex rel. v. Neff, 28 L. R. A. 413; College v. Society, 3 Gray, 280; Jackson v. Phillips, 14 Allen, 591; Fellows v. Minor, 119 Mass. 545; Library v. Bliss, 25 N. E. 92; State ex rel. v. Adams, 44 Mo. 576; Trustees v. Woodward, 4 Wheat. 518. (3) Equity cannot afford relief against an express clause of forfeiture. Brink v. Steadman, 73 Ill. 243; Village v. Graham, 136 Ill. 524; Shoenburger v. Hay, 40 Pa. St. 132; Doe v. Elsam, 1 Moody & Malkin, 191; Tyler on Ejectment and Adverse Possession, p. 282; Lynde v. Hough, 27 Barb. 420; 2 Wash. on Real Property (6 Ed., 1902), secs. 963-964; Brooks v. Gaffin, 192 Mo. 253; Brooks v. Gaffin, 196 Mo. 357. (4) The answer herein virtually admits a breach of the conditions. (5) If respondents claim that the Statutes of Uses executed the trust in said deed, we contend that the trust therein created is active, the trustee, Board of Trust, therein named, having duties to perform under the terms of Bredell's said deed, viz: To sell the property under decree of court and to reinvest the proceeds in other property, the title to the newly acquired property to be vested in the said Board of Trust permanently. Simpson v. Erisner, 155 Mo. 164; Pugh v. Hayes, 113 Mo. 431; Walton v. Catcham, 147 Mo. 217; Perry on Trusts (5 Ed.), sec. 305; Hill on Trustees (Am. Ed.), p. 360; Newton v. Rebenoch, 90 Mo. App. 657.

*W. M. Williams, H. S. Priest, Judson & Green, Seldon P. Spencer* and *Benjamin H. Charles* for respondents.

(1) The paramount purpose of the Bredell deed had nothing to do with the mere personnel of the trustee. That paramount purpose was that the property conveyed to the Board of Trust: (a) Should be used to carry on and perpetuate Westminster College as an institution of learning, and that that property, or property lawfully substituted therefor in accordance with the provisions of the deed, should form part of the "permanent endowment" of the institution. (b) Should be used, occupied and controlled by the Board of Trustees. (c) As incidental to the paramount purpose, and as a means of securing it with certainty, he provided that neither the Board of Trust, nor the Board of Trustees, nor any other person should ever mortgage or incumber the land conveyed. (d) And he also desired and intended to vest the title in a corporation controlled by the southern synod, in order to be sure that the property should not be claimed and seized by the northern synod. (2) The decree of the circuit court dissolving the Board of Trust, and vesting the title in the Board of Trustees had no effect other than a mere change of trustees. There was no change in the trust itself, nor in the beneficiary. (a) This was no breach of the conditions of the Bredell deed, for that could only refer to a voluntary conveyance by the trustee. (b) It is an ancient and original exercise of equity jurisdiction to accept the resignation of a trustee, discharge him from his trust and appoint a new trustee. 28 Ency. Law, 958-961; Society v. Academy, 94 Mo. 459. (c) Even if Bredell had expressly prohibited the changing of trustees, which he has not done, a court of equity would still have such a power to make such a change if changed conditions made it desirable. Lackland v. Walker, 151 Mo. 248;

Association v. Campbell, 147 Mo. 103; Gaston v. Hayden, 98 Mo. App. 683. The very radical changes in the attitude of the two Missouri synods toward each other and their willingness to unite in the joint support of the college, constitute such changed conditions as clearly justify the change of trustees directed by the court. Society v. Academy, 94 Mo. 459. (d) The circuit court having had jurisdiction, its appointment cannot be attacked collaterally; and its decree substituting a successor trustee for the trust is not open for review; and the deed made by the trustee to its successor having been made under order of court is the same as if the court itself had transferred the title. R. S. 1909, sec. 2109. (e) The Bredell heirs not being beneficiaries in the trust, nor claiming under the trust provisions of the deed, were not necessary parties to that proceeding. The bill was entirely proper for the purpose of procuring the appointment of a successor trustee. The condition in the deed was against a voluntary sale and conveyance by the Board of Trust which would mean an abandonment of the property for college purposes. The grantor did not mean to prohibit the appointment of a new trustee, and the appointment of a new trustee was not a voluntary sale and conveyance within the meaning of the provision in the Bredell deed providing for a forfeiture. (3) Conditions subsequent, because they tend to destroy estates, are not favored, are strictly construed, and every intendment is against the grantor. Van Horn v. Mercer, 64 N. E. 532; Hunt v. Beeson, 18 Ind. 380; Manifold v. Jones, 117 Ind. 212; 13 Cyc. 629; Adams v. Lindell, 5 Mo. App. 209, affirmed 72 Mo. 198. If this be true in ordinary cases, how much more strictly should the rule be enforced when the dominant purpose of the grantor is being effectuated, and the alleged right of reentry is asserted because of an assumed technical breach in a change of trustees, which

cannot operate to the disadvantage even in the slightest degree of the real beneficiary for which the grantor was making provision. Pomeroy's Eq. Juris., sec. 381; Rogan v. Walker, 1 Wis. 527; Merrifield v. Cobleigh, 4 Cush. 178; Chute v. Washburn, 46 N. W. 555. (4) The use was executed. R. S. 1909, sec. 2867; Carter v. Long, 181 Mo. 701; Ottomeyer v. Pritchett, 178 Mo. 160. (a) No active or discretionary duties were imposed upon the Board of Trust. The property was to be used, occupied and controlled by the Board of Trustees. (b) The function of making a conveyance when directed by a court of equity was not a discretionary duty such as would bring this trust within the exception to the rule above stated. (c) The conveyance provided that neither the Board of Trust nor the Board of Trustees should have power to encumber the property. This indicates an expectation in the mind of the grantor either: 1, that the use was or would become executed, or, 2, that the Board of Trustees might at some time become the successor trustee.

KENNISH, J.—This appeal is from a judgment of the circuit court of Cole county in an ejectment suit. By agreement the cause was tried to the court without a jury. After hearing the evidence and arguments the court took the case under advisement and thereafter filed a written memorandum containing a statement of facts and conclusions of law thereon, which we consider so in accord with the evidence and the principles of law applicable thereto that, except as to what is said as to the defense of estoppel, we reproduce and adopt it as a part of this opnion. It is as follows:

"Suit in ejectment for the possession of the Westminster College property at Fulton, Missouri, by plaintiffs as heirs of Edward Bredell, deceased.

Bredell v. Westminster College.

"Petition filed in Callaway county April 18, 1911, and venue changed to Cole county, Missouri.

"Westminster College was incorporated by an act of the Legislature long prior to the Civil War, for educational purposes, under control of the Synod of Missouri of the Presbyterian Church (old school).

"In 1866 the Board of Trustees borrowed from William King $5000, and executed a mortgage on the college real estate to secure same. The note being unpaid, the property was sold in 1867 by the mortgagor for the debt and cost, and was purchased by Henry M. Anderson, who gave his note to King for the purchase price, with Edward Bredell as surety.

"On June 29, 1869, Bredell paid this note to King, and Anderson conveyed the college property to him.

"Afterwards, July 9, 1869, Bredell made a written proposition to the college trustees that if they would raise a new endowment for the college of $100,000 he would convey to it, or to a trustee for its use, the college property. Some ten years passed and the college authorities had failed to raise the promised endowment; meantime the Synod of Missouri had caused to be organized a corporation called the Board of Trust, having general power to accept and hold personal property for the college and for other purposes.

"Afterwards, on December 17, 1879, a new contract was executed by the Board of Trustees, the Board of Trust and Bredell, under which the latter agreed to convey the college property to said Board of Trust, as trustee, waiving the endowment, if the latter would have its charter amended within ninety days so as to authorize it to hold real estate.

"This agreement provided that: 'The Board of Trust shall permit the said real estate and the buildings which now are, or may hereafter be erected thereon to be used, occupied and controlled by the trustees of Westminster College for the educational pur-

poses of said college and not otherwise; but without any power on the part of said Board of Trust, or any other person, to suffer or permit any incumbrance thereon; and without power on the part of said Board of Trust to convey or dispose of the same, except the sale thereof be ordered by a court of competent jurisdiction, for the purpose of investing the same in other real estate, to be held, used and managed upon the like trusts as hereinbefore stated, and none other.'

"The charter of the Board of Trust having been amended, as required, Bredell and his wife, on April 16, 1880, conveyed the college property by warranty deed to said Board of Trust, as trustee for the college, which deed was accepted and is recorded in Book 13, page 259.

"As plaintiffs predicate their right to recover the college property on this deed, it becomes necessary to set out its conditions, which plaintiffs claim have been forfeited, as follows:

" 'Upon trust that the party of the second part shall permit the said lands hereinbefore described and conveyed and the buildings and improvements which now are or may hereafter be erected thereon to be used, occupied and controlled by the Board of Trustees of Westminster College (a corporation existing under the laws of the State of Missouri) for the educational purposes of said college and not otherwise, from time to time in accordance with the powers conferred upon said corporation in and by the charter thereof and amendments to the same, and with the purpose for which said college was incorporated, provided, nevertheless, and this grant and conveyance is made upon the express condition that neither said party of the second part herein nor said Board of Trustees of Westminster College nor any person whatsoever shall at any time suffer or permit any incumbrance or lien of any description to be created or imposed upon said premises hereby conveyed, and upon the further ex-

press condition that the said party of the second part shall not convey or dispose of the said above described and granted premises, whether absolutely or upon condition, to any other person, for any purpose or upon any consideration whatever, except the sale thereof be ordered by a court of competent jurisdiction, upon due proceedings had therefor, according to the course of equity in such cases, for the purpose of selling the said property, or such part thereof as may be decreed to be sold by such court in pursuance and fulfillment of the trusts for which said Westminster College was organized, with a view to invest the proceeds of such sale in other real estate to be held, used and managed by said party of the second part or its successors in the trust hereby declared and granted, upon the like trusts hereinbefore stated and none other; it being intended by the parties hereto that the title to said lands and tenements hereinbefore described and of, in and to all other lands which may be purchased in substitution therefor as hereinbefore provided, if any, shall be vested in said Board of Trust, party of the second part herein, as part of the permanent endowment of said Westminster College, and the principal thereof shall never be diminished, incumbered, diverted or disposed of or used for any purpose except as hereinbefore authorized and provided.

" 'And it shall be lawful for the said grantor and his heirs or assigns, upon a breach of the trusts or conditions hereinbefore stated, or any or either of them, to enter and take possession of said premises and the same thereafter to hold discharged of the trusts hereinbefore declared and as of his former estate.

" 'And the said Edward Bredell, grantor herein, covenants to and with the said party of the second part herein, to warrant and defend the title to said above described and granted premises, so long as the said trusts above declared shall be faithfully executed

and so long as the said several conditions hereinbefore stated shall be fully complied with, against all persons lawfully claiming or to claim the same, by, through or under him, the said grantor, but against none others.'

"On June 7, 1909, the Board of Trust, with the approval of the Synod of Missouri of the Presbyterian Church, and in pursuance of a decree of the Callaway Circuit Court, in a suit wherein the said Board of Trust was plaintiff and the Board of Trustees of Westminster College was defendant, conveyed said college property to the defendant, subject to the conditions in the deed from said Edward Bredell in regard to the sale or alienation.

"The plaintiffs claim that this conveyance was a violation of the conditions in the Bredell deed which forfeited the title to the property and authorized them, as the heirs of Bredell, to re-enter and re-take the property.   Hence this suit.

"The petition states an ordinary action in ejectment for the college property, with damages, rents and profits.

"The answer of the defendants is lengthy.    It sets out the incorporation of the college, the incorporation of the Board of Trust, the conveyance from Edward Bredell to said Board of Trust of the college property; the resolutions adopted by said Board of Trust October 25, 1907, regarding the transfer of the college property to the Board of Trustees; the submission of said resolutions to the Synod of Missouri; the approval of such transfer by the Synod; the proceedings in the Callaway Circuit Court resulting in the decree authorizing and directing such transfer and the conveyance made pursuant to said decree.

"The following excerpt from the answer contains the gist of the defense:

" 'Defendants further allege that the only effect of the said decree of the Callaway County Circuit

Court, so far as this real estate was concerned, was to change the trustee by dissolving the said Board of Trust of the Synod of Missouri, and appointing a successor thereto in said trust, who should thereafter hold the record title to said property, and to vest the record title in the Board of Trustees of Westminster College as trustee in place of said Board of Trust; and under said decree the defendant, the Board of Trustees of Westminster College, as successor is bound to hold said real estate as trustee and to use it for the purposes of said trust, in the same manner and subject to all the conditions, restrictions and limitations under which it theretofore had been held and used by said Board of Trust; and that the execution and delivery of the deed of June 7, 1909, was not a departure from or violation of any restriction, condition or limitation contained in said orignal deed from Edward Bredell, deceased, which, in express terms, refers to ''successors'' in said trust, who may be appointed to succeed said original trustee.'

''Said answer also pleaded an estoppel against plaintiffs, in this: That plaintiffs had knowledge of the transfer of title in January, 1910, and stood by and allowed defendants to erect a new building in place of the main college building destroyed by fire, costing $70,000, without notice of their claim.

''Defendants also present a special plea in the nature of a counterclaim, wherein they allege that by the wrongful action of plaintiffs in claiming said property and in bringing this suit, it has been unable to collect funds to carry on its work and has thereby been damaged to the amount of $25,000. They also pray that plaintiffs be enjoined from bringing any other suit in ejectment.

''Other matters are pleaded in the answer not necessary to notice.

''The reply of plaintiffs to the answer of defendants, denies that the Callaway Circuit Court, which

rendered the decree above mentioned, had any juris-
diction in the matter, and that, as plaintiffs were not
parties to that suit, the same is not binding on them.

"The various records in regard to the title to said
property, wherein said Edward Bredell was a party,
are set forth in said reply, so that practically all the
muniments of title affecting the property are set forth
in the pleadings.

"On the trial copies of all these records were
offered in evidence. Plaintiffs offered no oral testi-
mony.

"For defendants, Rev. J. F. Cowan, a member of
the faculty of Westminster°College for fifty years, tes-
tified, subject of the objections of plaintiffs, that, ow-
ing to a political question growing out of the Civil
War, the Synod of Missouri divided in 1866, the ma-
jority remaining as an independent body, while the
minority remained with the northern church; the trus-
tees and faculty of Westminster College were strongly
in favor of the independent synod, which afterwards,
in 1874, joined the southern church; that after the
division of the synod, in order to preserve the college
property, the plan of giving a mortgage on it and per-
mitting the property to be sold was agreed upon and
carried out; also that the organization of the Board
of Trust, as trustee, by the Synod of Missouri, to hold
the legal title to the property, was a part of this plan.
He also testified that there had never been any change
at any time in the management of the property and
that the trustees of the college had always managed
and controlled it.

"Dr. Kerr, president of the college, testified that
some years ago an arrangement had been made be-
tween the two synods of Missouri (northern and
southern) whereby the former agreed to assist in the
support of the college, and had raised a large endow-
ment for that purpose, but insisted that the legal title
to the property should be vested in the college trus-

tees, and for this reason he had made the recommenda-
tion to the synod. He also stated that it had been
impossible to raise any funds for the college since
the bringing of this suit, and the work and efficiency
of the school had been thereby injured.

"In addition to oral argument, counsel on both
sides have furnished me with elaborate briefs. I have
read the latter carefully and with much interest, and
while many things are discussed, it seems to me the
entire matter resolves itself into one single question,
the answer to which will be decisive of the case: Was
the conveyance by the Board of Trust to the Board
of Trustees, dated June 3, 1909, such a violation of
the conditions of the deed from Edward Bredell to
said Board of Trust, dated April 16, 1880, as to for-
feit the title to said property?

"Plaintiffs stand on the legal proposition that the
donor of a charitable gift has a right to annex such
conditions thereto as he may see proper, and a de-
parture from those conditions works a forfeiture;
that in this case, considering the conditions and cir-
cumstances under which Mr. Bredell acquired, held
and conveyed this property, it was clearly his inten-
tion that the Board of Trust should always continue
as the trustee of said property, and any sale or trans-
fer by said trustee resulted in a forfeiture, upon which
he or his heirs might re-enter.

"On the other hand, defendants claim:

"(1) That there has been no 'sale' of the college
property; only a change of trustees.

"(2) That under the statute entitled 'Uses and
Trusts' (Sec. 2867, R. S. 1909), the deed from Edward
Bredell to the Board of Trust, as trustees for the
defendant, and the said trustee being charged with no
active duty, the legal title, as well as the equitable
title, became vested in the said Board of Trustees.

"(3) That, even if the conveyance by the Board
of Trust to the college trustee was wrongful and ille-

gal, still the beneficial trust would not fail by reason thereof, but that a court of equity, on proper presentation of the facts, would appoint a trustee to carry out the intention of the founder.

"(4) Estoppel—that plaintiffs, after knowledge of the change of title, made no claim for a year; during which time defendants expended $70,000 in a new building.

"(5) *Ultra vires*—that if the restriction in the Bredell deed was an absolute prohibition of the transfer of the title, then such attempted transfer was a nullity, and the title remained as it was before the transfer.

"Other defenses to the action were suggested, but in the view I take of the case it is unnecessary to refer to them.

"I have attempted, by a careful analysis of all the evidence, to ascertain the purpose of Edward Bredell, the donor, in regard to this trust property. Leaving out of view, for the present, the testimony of Dr. Cowan that the entire scheme of giving a mortgage on the property, permitting it to be sold, and the title diverted from the college trustees in whom it vested, was to prevent the northern synod from obtaining control, and treating Mr. Bredell as the absolute owner and not a trustee of the property, a careful examination of all the papers signed and executed by him from signing of the mortgage in 1866 to executing the final deed April 16, 1880, there plainly appears one primary purpose, always kept in view, and that was to aid and assist in building up and maintaining Westminster College. He first signed the proposition, called by plaintiffs' counsel a deed poll; proposed if $100,000 new endowment were raised by the college he would convey the property to the trustees or 'to such a body specially authorized to hold the title to said property for the use and benefit of said college.'

"The benefit to the college was the main idea; the trusteeship a mere incident. At that time the Board of Trust was not in existence, and when it was afterwards organized by authority of the synod it is but natural that he should refer to it. But the 'condition subsequent' contained in the deed of April 16, 1880, is that on which plaintiffs base their claim of a forfeiture. It will now be examined.

"This deed, in its *habendum* clause, was to 'the Board of Trust . . . and to its successors in trust, and assigns forever, to the use of the said corporation,' Westminster College. The conditions were two: the first and primary was (omitting superfluous words) that said property should be used, occupied and controlled by the Board of Trustees of Westminster College for its educational purposes and not otherwise, in accordance with the powers conferred upon said corporation and with the purpose for which said college was incorporated. The second (and secondary) condition was that neither the grantee, the college trustees nor any one else should ever 'convey or dispose of' said property, either by mortgage or absolute sale, except such sale were authorized by a court having jurisdiction.

"Defendants in their brief allege that Edward Bredell had no right to insert the latter clause in his deed, giving him and his heirs a right to declare a forfeiture in case the conditions were violated. A sufficient answer to this contention is that the grantee accepted the deed, with its conditions, and is bound by it.

"The circuit court of Callaway county had jurisdiction of the parties to that suit and also of the subject-matter, and its decree, in so far as it had jurisdiction, is binding. But the plaintiffs, not having been parties to that suit, are not bound by its decree, except as to such matters over which the court had jurisdiction.

"The Board of Trust, as trustee of the college property, h'ad a right, as has every trustee, to resign its trust, and the circuit court of Callaway county, in which county the property was located, had the right to accept such resignation and the right to appoint another trustee. [Brandon v. Carter, 119 Mo 572.] In my judgment this was the sole legal effect of that decree. It is true the decree directs that the deed be executed, which was done, and the same purports to be a deed of bargain and sale with a consideration of one dollar; but, as a matter of fact and of law, there was a mere change of the title and no deed was necessary. There was no 'sale' of the property within the meaning of that word. The use, management and control remained as it had always been, and as Edward Bredell intended it should always remain.

"Edward Bredell was a Presbyterian and by his efforts assisted in building up a school wherein young men should be taught and trained in Presbyterian doctrine of the same brand (old school) in which he believed. This was his purpose, clearly expressed and repeated.

"Suppose there had been another school in Fulton under control of another religious denomination, and the trustee, the Board of Trust, had sold or attempted to sell the Westminster College property to this school, it would have been clearly within Mr. Bredell's prohibition. In my judgment this was the kind of sale that Edward Bredell was so anxious to guard against in all his contracts and agreements.

"Westminster College has existed for nearly two generations. The various members of its board of trustees have consisted of men eminent in the church and the nation; its faculty has been eminent for learning and piety; its students have been legion and have achieved success in every walk in life, in church, state and nation, and have been justly proud of their *alma mater*. Its property, the greater part of which is in-

volved in this suit, represents the slow accumulation of all the years of its existence. It represents the best efforts and sacrifices of a part of the best men and women, not only of the Presbyterian Church, but of the good people of Fulton and Callaway county, who have a just pride in its work, its history and its traditons. Now, in view of all these facts, should this property be transferred to these plaintiffs on what at most was a mere technical violation of a clause of forfeiture in the deed of Edward Bredell, which would defeat the very purpose of said deed? I do not think so.

"The plaintiffs are said to be collateral and not direct heirs of the donor, Edward Bredell, but I am not sure this fact was in evidence. But the evidence does not show that they ever contributed a penny towards this property, or that they have any interest therein.

"If the trustee, the Board of Trust, resigned as trustee, the Callaway Circuit Court had a legal right to appoint the defendant as its successor, and such appointment cannot be questioned in a collateral proceeding. 'A trust shall never fail for want of a trustee.'

"There are various other matters referred to by counsel in their briefs, but as the views enunciated dispose of the case it is not necessary to dispose of them, except to say that the claim of defendants, in case of a finding in their favor, for damages against plaintiffs by reason of making claim and bringing suit for this property, is a novel one for which I find no precedents, so far as my experience extends, and it will be disallowed.

"As the evidence shows that the bringing of the suit, with the uncertainty attending its result, has been a great detriment to the college, the prayer of the defendants will be granted in this respect and the title quieted as to plaintiffs."

Omitting formal parts, the court entered the following judgment and decree:

"And the court having heard the evidence and being in the matter fully advised, doth find the issues for the defendants.

"It is therefore considered by the court that the plaintiffs take nothing by this suit; that said defendants go hence without delay and that they recover of the plaintiffs their costs herein and have thereof execution.

"And it further appearing to the court from evidence in the case that plaintiffs have no right, title or interest in the real estate described in the petition, and that this litigation or any further litigation in regard to said property would be greatly detrimental to the right and interest of said Westminster College, and said defendant, the trustees of said Westminster College, having prayed for relief against the plaintiffs in this behalf in their answer herein, it is therefore considered and adjudged by the court that the title to the real estate described in plaintiffs' petition be quieted against the plaintiffs, and that the said plaintiffs, and each of them, their agents and attorneys be enjoined and restrained from interfering in any manner with the management or control of said real estate, or from having or maintaining any other or further suit or action to recover said property, or any part thereof, so long as said property is held and managed by said trustees for the use and benefit of said Westminster College for the purpose for which it was incorporated and under the conditions and restrictions contained in the deed from Edward Bredell to the Board of Trust of the Synod of Missouri, dated April 16, 1880, and recorded in the recorder's office of Callaway county, in book 13, at page 259, and following."

The following observations are made as supplementing what is so well said by the learned chancellor.

Plaintiffs based their right to recover upon an alleged forfeiture of title by reason of a breach of a condition subsequent in the deed of the ancestor. The conditions of the deed, substantially, were (1) that the trustee should permit the beneficiary to use, occupy and control the property conveyed, for the educational purposes of the college and not otherwise, and (2) that the property should not be sold or incumbered. It is not claimed that there was a breach of the former condition, and the case rests solely upon an alleged breach of the latter. Was there a sale or conveyance of the property within the meaning of the language of the deed? In considering this question we must not overlook the facts and circumstances under which the alleged conveyance was made.

A corporation, as in the case of a natural person, may cease to exist. The deed clearly recognized that contingency in conveying the title to the trustee "and to its successor in trust." The Board of Trust resigned its trusteeship and was dissolved by a decree of the circuit court of Callaway county. Whether or not such decree of dissolution of the corporation was regular, we need not decide. The jurisdiction of a court of equity to appoint a trustee in case of a vacancy, in order to take title to the property and administer the trust, is undoubted. In the exercise of such power the court may not always act in accordance with correct principles of law, but, being possessed of authority, its action cannot be attacked collaterally, and must stand until reversed or overruled in the proper tribunal. Attention is directed to this phase of the case because all that was done in the transference of the legal title to the property was done by the judgment and direction of the court, for it cannot be maintained that the mere filing of the petition by the trustee, though advising and praying such judicial action, amounted to a conveyance of the property or a breach of the conditions of the deed.

True, after divesting the Board of Trust of the legal title and vesting it in the Board of Trustees, subject to all of the trusts and conditions of the deed, the court ordered "for further confirmation of the title" that the Board of Trust convey the legal title to the Board of Trustees, but, as said by the learned chancellor, this direction was unnecessary, and compliance therewith added nothing to the title as already passed by judgment of the court.

It is thus apparent that the conveyance of the title, complained of as a breach of the condition of the deed, was made not by the trustee but by the judgment of a court having full jurisdiction in the premises. It does not avail plaintiffs to insist that they were not parties to that suit and therefore not bound by the judgment, for, aside from the action of the court, the record fails to disclose any act which can be considered as a conveyance of the property. It is the judgment itself the plaintiffs must rely upon as working the forfeiture, and not the facts constituting the cause of action in which the judgment was rendered. The trustee had the right to terminate its trusteeship. That fact was recognized in the deed. When it was about to terminate its connection with the property, and its existence, it was evident that there would be no trustee. A trust will not be allowed to fail for want of a trustee, and the court was acting within its recognized equity jurisdiction in appointing a trustee and in making the necessary transfer of the legal title. Whether the trustee was qualified to administer the trust or whether the proceeding was free from error, we do not consider before us for decision. What we decide is that neither what was done by the trustee nor by the decree and order of the court, in connection with the transfer of the legal title to the property, can be held to have been a conveyance, within the meaning of the conditions of the deed.

We are also of the opinion that under the facts in evidence plaintiffs were not entitled to recover, for the reason that they had waived such right, if it ever existed.

It was stipulated by the parties that plaintiffs ascertained by rumor in January, 1910, the facts as to the execution of the deed and its terms, and that they also learned at the same time that the main college building had been destroyed by fire and that subscriptions were being solicited to rebuild the same on said land. No right of entry was asserted by plaintiffs, nor was suit filed by them until April 18, 1911, during which intervening time a building costing about seventy thousand dollars had been erected. It is a well recognized principle of the law of real property that in case of a breach of a condition subsequent the title does not *ipso-facto* revert to the grantor, but remains in the grantee until by re-entry on the property or some act equivalent thereto the grantor asserts his rights arising by reason of the forfeiture. [Ellis v. Kyger, 90 Mo. 600; 2 Washburn on Real Property (6 Ed.) sec. 951, *et seq.;* 13 Cyc. 706.] While mere lapse of time alone, within the period of limitation, will not bar his right of entry to enforce a forfeiture, yet, if the grantor delays an unreasonable length of time before asserting his right, and knows that the grantee, on the faith of his title, is making valuable improvements on the property, so that there exist in the case the elements of an estoppel, he will he held to have waived his right to a forfeiture. [2 Washburn, supra, sec. 961; Kenner, etc. v. American Contract Co., 9 Bush, 202; Ludlow v. New York, etc. R. R. Co., 12 Barb. 440; Trustees v. Patrick, 31 Ky. Law Rep. 287; Maginnis v. Knickerbocker Ice Co., 112 Wis. 385; Royal v. Aultman & Taylor Co., 116 Ind. 424; 1 Jones on Real Property, sec. 705; 2 Devlin on Deeds (3 Ed.), sec. 959 and note 2.]

242 Sup.—22

Washburn, supra, sec. 961, states the law as follows: "A forfeiture may be saved though a condition may have been broken, if the party who has the right to avail himself of the same waives this right, which he may do by acts as well as by an express agreement."

And in Kenner, etc. v. American Con. Co., supra, l. c. 210, the court said: "The more modern authorities on the subject of such forfeitures establish the doctrine that it is with the party in whose favor the condition is, or who becomes entitled to the estate by reason of the forfeiture, to say whether the estate shall be forfeited or not; and although the user, from which the grant of a public passway may be implied, must have continued for a period required to toll the right of entry in ejectment, the waiver of a forfeiture may nevertheless be inferred by reason of the failure of the party entitled to the estate to re-enter or assert some claim in a reasonable time, terminating the estate; and particularly in a case where the party to whom the grant is made is permitted to use and make valuable improvements on the premises after the condition is broken."

The plaintiffs stood by for more than a year after they learned of the facts under which they are now claiming title. They knew that a large sum of money, raised by charitable contributions, was being invested to improve this property and enable those in charge thereof to carry out the purposes of that institution, but they made no claim of title during all of that time, and we think such facts brought this case within the doctrine of waiver and constituted a good defense to plaintiffs' suit. The judgment is affirmed. All concur; *Graves, J.*, in the result.