SMITH, APPELLANT, *v.* HOFFMAN, RESPONDENT.

(No. 4,023.)

(Submitted September 16, 1919.  Decided. October 17, 1919.)

[184 Pac. 842.]

*Deeds—Cancellation—Rescission—Conditions Subsequent—Forfeiture—Waiver — Estoppel — Consideration—Findings—Review—Equity.*

Appeal and Error—Equity—Findings—Evidence—Extent of Review.
　　1.　Findings in an equitable action will not be reversed on appeal unless the evidence clearly preponderates against them.
Deeds—Contracts—Part of Same Transaction—Construction.
　　2.　*Held*, under section 5031, Revised Codes, that a deed made upon a condition subsequent imposed by a separate writing, under the terms of which the grantee obligated herself to make a stipulated monthly payment to a third person, with reversion in favor of the grantor, were part of and constituted the same transaction, regardless of whether they were executed at the same time or not.
Same—Conditions Subsequent—Breach of Contract—Cancellation—Waiver.
　　3.　Breach by the grantee of a condition subsequent of the nature of the above (par. 2), if not waived, entitles the grantor to cancellation or rescission.
Same—Conditions Subsequent—Waiver.
　　4.　A condition subsequent involving a forfeiture may be waived, and was waived by letters from the grantor to the grantee indicating that the former had relieved the latter from the necessity of making further monthly payments to a third person as a condition for the conveyance of realty, the waiver being binding though made without consideration.
Same—Forfeitures—Strict Construction.
　　5.　Under section 4906, Revised Codes, a provision constituting a forfeiture must be strictly construed against the party for whose benefit it is created.

Contracts—When to be Enforced.

    6.　Courts will not, through the **aid** of cancellation or rescission, relieve a party from the effect of a contract made impulsively or out of generosity and not based upon business principles, but uphold it as made.

Estoppel—Waiver—Consideration.

    7.　Where the acts or conduct of a party are such as to estop him from insisting upon the right claimed to have been relinquished, no *consideration is necessary.*

Deeds—Life Estates—Conditions Subsequent—Effect of Waiver.

    8.　*Held,* that where a conveyance upon condition subsequent amounted only to a life estate, determinable upon the grantee's marriage, with reversion to the grantor and her heirs, waiver of the condition did not convert it into one in fee simple.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

Action by Mary M. Smith against Sadie Hoffman. Judgment for defendant. Plaintiff appeals from the judgment and an order denying her a new trial. Reversed and remanded, with directions.

*Mr. H. G. McIntire,* for Appellant, submitted a brief, as well as one in reply to that of respondent, and argued the cause orally.

The contentions of plaintiff as to the principles of law applicable, are as follows: The deed (Exhibit A) and the memorandum relating to and limiting its terms and effect, must be construed as one instrument. (Rev. Codes, sec. 5031; *Dodd* v. *Vucovich*, 38 Mont. 192, 99 Pac. 296; *Lyon* v. *Dailey Copper Co.*, 46 Mont. 108, 120, 126 Pac. 931; *Chicago Trust etc. Bank* v. *Chicago T. & T. Co.*, 190 Ill. 404, 83 Am. St. Rep. 138, 60 N. E. 586.) The intention of the parties must be ascertained. (Rev. Codes, secs. 7876, 7877; *Ford* v. *Drake*, 46 Mont. 314, 127 Pac. 1019.) The intention in the present instance was, at the most, to transfer only a limited estate, and the general terms of the deed are controlled by the inconsistent particular intent evidenced by the contemporaneous writing. This, too, is corroborated by the fact of defendant's making part payments in pursuance of such writing; a fact which is wholly incon-

sistent with the notions that a fee simple was intended by the deed.

By the two instruments, a transfer upon condition precedent was effected, the condition being the continued payments of $50 per month, for an unlimited time, that is for a length of time without restrictions or bounds. In other words, during the lifetime of Mrs. McNaught. "Precedent conditions are such as must happen or be performed before the estate can vest or be enlarged (*Towle* v. *Remsen,* 70 N. Y. 303, 309; *Warner* v. *Bennett,* 31 Conn. 468, 475; *Star Brewery Co.* v. *Primas,* 163 Ill. 652, 45 N. E. 145, 147; *Cooper* v. *Green,* 28 Ark. 48, 54; *Moore* v. *Sanders,* 15 S. C. 440, 442, 40 Am. Rep. 703; *Rogan* v. *Walker,* 1 Wis. 527, 554; *Jarboe* v. *Hey,* 122 Mo. 341, 353, 26 S. W. 968), as if a lease be made to commence from the first day of May thereafter, 'on condition' that B pay a certain sum of money by that time. (*Blean* v. *Messenger,* 33 N. J. L. (4 Vroom) 499, 503.) If land is conveyed upon a condition precedent, the title will not pass until that condition is performed. (*Star Brewery Co.* v. *Primas,* 163 Ill. 652, 45 N. E. 145, 147.)"

Not only by the general law but by the terms of Revised Codes, section 4624, the passing of an estate in the property in question is dependent upon the performance of the condition. As this has not been performed, no estate of any kind passed to defendant; her assertion of title is wrongful; her recording of the deed was wrongful; and a cloud is cast upon plaintiff's title which should be removed. (*Brannan* v. *Mesick,* 10 Cal. 95; *City of Stockton* v. *Weber,* 98 Cal. 433, 33 Pac. 332.)

Whether a conveyance is upon condition, precedent or subsequent, is a question of the intent of the parties thereto. (*Rannels* v. *Rowe,* 145 Fed. 296, 74 C. C. A. 376; *Peterson* v. *Atlantic & B. R. Co.,* 120 Ga. 967, 48 S. E. 372; *Nicoll* v. *New York & E. R. Co.,* 12 N. Y. 121, 127; 2 Devlin on Deeds, sec. 958.)

If the result reached in the construction of this transaction is adverse to its being a conveyance on condition precedent, the query then arises whether the continued payment of $50 per

month is not a condition subsequent, within the meaning of section 4902, Revised Codes. Here, too, the question of intent is involved. (See cases, *supra.*) And a clause for re-entry is not necessary. (*Papst* v. *Hamilton,* 133 Cal. 631, 66 Pac. 10; *Gall* v. *Gall,* 126 Wis. 390, 5 L. R. A. (n. s.) 603, 105 N. W. 953; *Glocke* v. *Glocke,* 113 Wis. 305, 57 L. R. A. 459, 89 N. W. 118.)

The rule in this character of cases is this: "Where a conveyance is made by parents to a son [and the principle is applicable to transactions between any relations] on the condition that he should support them, it may, upon proof of the breach of the condition be rescinded by a court of equity." (2 Devlin on Deeds, 1823; *Horner* v. *Chicago, M. & St. Paul Ry. Co.,* 38 Wis. 165; *Blake* v. *Blake,* 56 Wis. 392, 14 N. W. 173; *Houston* v. *Greiner,* 73 Or. 304, 144 Pac. 135.) The present action is founded upon such theory, the complaint being modeled upon that in *Bogie* v. *Bogie,* 41 Wis. 209, which is cited approvingly in *Bresnahan* v. *Bresnahan,* 46 Wis. 385, 1 N. W. 39, and the doctrine of which is reaffirmed in *Gall* v. *Gall, supra.*

Upon nonperformance of a condition subsequent, the title reverts to the grantor. He may resume possession as though no conveyance had ever been made, or may bring an appropriate action such as the instant one. (Rev. Codes, sec. 462; *Parsons* v. *Smilie,* 97 Cal. 647, 654, 32 Pac. 702.)

Applicable general principles: In an action of this nature no prior demand on the defendant is necessary; the suit itself is sufficient. (*Horner* v. *Chicago, M. & St. Paul Ry. Co., supra; Liebrand* v. *Otto,* 56 Cal. 242.) A demand is never necessary where the circumstances show it would not be complied with, as "the law neither does nor requires idle acts." (Rev. Codes, sec. 6200; *Cassidy* v. *Slemons etc.,* 41 Mont. 426, 109 Pac. 976.) Parol evidence is admissible to prove the real or no consideration for an instrument. (2 Devlin on Deeds, secs. 822, 830; *Horner* v. *Chicago, M. & St. P. Ry. Co., supra; Blake* v. *Blake,* 56 Wis. 392, 14 N. W. 173.) Terms of an agreement, other than those contained in the writing, may be shown when mistake or imperfection alleged. (Rev. Codes, sec. 7873, subd. 1.)

By the two papers an implied trust was created. (*Grant* v. *Bell,* 26 R. I. 288, 58 Atl. 951.) A trust may be revoked by consent of all the beneficiaries thereto. (Rev. Codes, sec. 5406; *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, 26, 54 Pac. 370; *Hellman* v. *McWilliams,* 70 Cal. 449, 11 Pac. 659.) Defendant has at the most but a life estate, or one determinable upon her remarriage. Her consent to the revocation of the trust is not essential, for by failing to comply with the terms of it such a consent is dispensed with. No one is allowed to take advantage of his own wrong. Indeed there is here presented a renunciation, a repudiation of whatever trust was created in favor of the defendant, and dispensed with any consent on her part to the bringing about of a judicial revocation.

Although the creation of a trust in lands by parol is in violation of the statute of frauds (Rev. Codes, sec. 4537; *Hidden* v. *Jordan,* 21 Cal. 92, 99, 102; *Brison* v. *Brison,* 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689; *Nordholt* v. *Nordholt,* 87 Cal. 552, 22 Am. St. Rep. 268, 26 Pac. 599; *Tench* v. *McMeekan,* 17 Cal. App. 14, 118 Pac. 476), yet any informal writing will satisfy the statutory requirements, *e. g.,* admissions in an answer. (2 Pomeroy's Equity Jurisprudence, p. 1991, note.)

That the present action will lie, there can be no doubt. Most of the courts entertain such actions as equitable. (See the cases cited in the footnotes to *Abbott* v. *Sanders,* 12 Ann. Cas. 900; *Mash* v. *Bloom,* 14 Ann. Cas. 1012, 43 L. R. A. (n. s.) 916; *Steffy* v. *Esler,* 6 Idaho, 228, 55 Pac. 239.) Mere delay for a long time to assert a cause of action, where no injury has been done to defendant, will not preclude relief. (2 Devlin on Deeds, sec. 807a.)

*Mr. O. W. Belden,* for Respondent, submitted a brief, and argued the cause orally.

The transaction, (a) does not involve a trust; and (b) Mrs. McNaught's only interest was that of a person in whose favor a contract has been made by others, and such interest terminated with rescission. Assuming, for the purpose of ar-

gument, that the memorandum must be considered a part of the contract, and (a) starting with the most obvious, there can be no valid claim that the deed is not a deed absolute on its face. It operated to convey a fee-simple title to respondent; and did do so, except it be affected by the memorandum.

Analyzing the memorandum, it is apparent that the title is not conveyed in trust for Mrs. McNaught. Neither the property conveyed nor any specified income therefrom is to be devoted to the support of Mrs. McNaught. There is no requirement to account. (*Brown* v. *Carter,* 111 N. C. 183, 15 S. E. 934; *Stanley* v. *Colt,* 5 Wall. (U. S.) 119, 165, 18 L. Ed. 502, 509; *Speirs* v. *Roberts,* 73 Mich. 666, 41 N. W. 841.)

(b) The only interest Mrs. McNaught had in the matter was that of a third person in whose favor a contract has been made by others. Having determined her interest, it will suffice for the present to show how the rights of such third person may be terminated. Section 4970, Revised Codes of 1907, gives no right to a third person for whose benefit a contract has been made, after rescission by the parties thereto. (*McDonald* v. *American Nat. Bank,* 25 Mont. 456, 65 Pac. 896; *Washer* v. *Independent Min. etc. Co.,* 142 Cal. 702, 76 Pac. 654; *Biddel* v. *Brizzolara,* 64 Cal. 354, 30 Pac. 609; see, generally, 3 Page on Contracts, secs. 1306-1322.)

Conditions precedent: In note 5, page 503, 6 Am. & Eng. Ency. of Law, it is said: "Conditions for the support of or payment of money to the grantor or some other person or persons named are generally construed to be conditions subsequent. *Weinreich* v. *Weinreich,* 18 Mo. App. 364, 370; and see *Jennings* v. *Jennings,* 27 Ill. 518; *Drew* v. *Baldwin,* 48 Wis. 529, 4 N. W. 576." See, also, *Goodpaster* v. *Leathers,* · 123 Ind. 121, 23 N. E. 1090, holding a deed conveying land to the grantor's wife and his two children "on condition of their supporting their mother off of said land," vests the fee, and simply charges the income.

An estate upon condition (regardless of whether precedent or subsequent) cannot be created by deed, except when the terms of the deed will admit of no other reasonable interpretation. It must in terms be upon condition or contain a clause of re-entry or forfeiture. If inoperative, the fee passes. (*Cullen* v. *Sprigg,* 83 Cal. 56, 23 Pac. 222; 13 Cyc. 668; *Noyes* v. *St. Louis etc. Ry. Co.* (Ill.), 21 N. E. 487.)

As between the two—conditions precedent and subsequent—the law favors the latter. (8 R. C. L. 1098, sec. 156; *Lewis* v. *Lewis,* 74 Conn. 630, 92 Am. St. Rep. 240, 51 Atl. 854.)

Conditions providing for support are seldom declared conditions precedent. (8 R. C. L. 1112, 1113; *Cross* v. *Carson,* 8 Blackf. (Ind.) 138, 44 Am. Dec. 742; *Leach* v. *Leach,* 4 Ind. 628, 58 Am. Dec. 642; *Gall* v. *Gall,* 126 Wis. 390, 5 L. R. A. (n. s.) 603, 105 N. W. 953; *Mash* v. *Bloom,* 133 Wis. 646, 14 Ann. Cas. 1012, 14 L. R. A. (n. s.) 1187, 114 N. W. 457.)

Conditions subsequent: "Conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction." (2 Devlin on Real Estate, sec. 970, p. 1805; *Cullen* v. *Sprigg,* 83 Cal. 56, 23 Pac. 222; *Reclamation District* v. *Van Loben Sels,* 145 Cal. 181, 78 Pac. 638; *Thompson* v. *Thompson,* 9 Ind. 323, 68 Am. Dec. 638; *Taylor* v. *Sutton,* 15 Ga. 103, 60 Am. Dec. 682; *McWilliams* v. *Nisly,* 2 Serg. & R. (Pa.) 507, 513, 7 Am. Dec. 654; *Kilpatrick* v. *City of Baltimore,* 81 Md. 179, 48 Am. St. Rep. 509, 27 L. R. A. 643, 31 Atl. 805; *Emerson* v. *Simpson,* 43 N. H. 475, 80 Am. Dec. 184, 82 Am. Dec. 168; *Peden* v. *Chicago etc. Ry. Co.,* 73 Iowa, 328, 5 Am. St. Rep. 680, 35 N. W. 424; *Rawson* v. *School Dist.,* 7 Allen (Mass.), 125, 83 Am. Dec. 670.) In all cases of doubt whether a clause is intended as a condition or a covenant, the doubt should be resolved in favor of holding the clause to be a covenant and not a condition." (2 Devlin on Real Estate, sec. 970b, p. 1809; *Gilchrist* v. *Foxen,* 95 Wis. 428, 70 N. W. 585; *Hershman* v. *Hershman,* 63 Ind. 451.)

**56 Mont.—20**

As a rule the determining factor is whether or not a more or less emphatic form of the expression "on condition" be employed in connection with the language claimed on the one hand to be a condition and on the other a covenant. For a full discussion of this subject see *Clapp* v. *Wilder,* 176 Mass. 332, 50 L. R. A. 120, 57 N. E. 692; *Post* v. *Weil,* 115 N. Y. 361, 12 Am. St. Rep. 809, 5 L. R. A. 422, 22 N. E. 145.

Collateral agreements affecting conveyances do not seem to be looked upon with favor by the courts. There are a number of well-considered cases bearing on this subject, although some of them depend upon statutory enactments for their authority. (*Sprague* v. *Kimball,* 213 Mass. 380, Ann. Cas. 1914A, 431, 45 L. R. A. (n. s.) 962, and note, 100 N. E. 622; *Kingsley* v. *Holbrook,* 45 N. H. 313, 86 Am. Dec. 173; *Cotton* v. *Cresse,* 80 N. J. Eq. 540, 49 L. R. A. (n. s.) 357, and note, 85 Atl. 600; *Middletown* v. *Newport Hospital,* 16 R. I. 319, 1 L. R. A. 191, 15 Atl. 800.)

The deed will operate as a deed, notwithstanding the clause sought to be construed as a condition is held inoperative. (*Cullen* v. *Sprigg,* 83 Cal. 56, 23 Pac. 222; *Lewis* v. *Curnutt,* 130 Iowa, 423, 106 N. W. 914.)

The condition was waived and released. (See Defendant's Exhibit 1.) "A condition may be waived or a forfeiture saved not only by express agreement, but also by acts, showing an intention to continue the estate in the grantee, or to voluntarily forego the benefits of the conditions, especially where the grantor's declarations, conduct or failure to act, when he ought to act, have been at variance or inconsistent with his right to enforce a forfeiture or have so continued for a long period of time." (13 Cyc. 706, 707.)

Mr. JUSTICE HURLY delivered the opinion of the court.

In brief, the plaintiff asks for the cancellation of a deed executed and delivered by the plaintiff March 14, 1910, by reason of the alleged breach, in October, 1910, of the condition of a contract (hereinafter referred to as the memorandum or

contract) entered into between the parties at the time of the execution of said deed, as follows:

"A written contract between two parties, Mary Smith, party of the first part, and Sadie Hoffman, party of the second part, concerning the deed to Hoffman House, that no less than $50 per mo. be paid to Mrs. J. 'A. McNaught for an unlimited time and the deed then will stand good until the marriage or death of the party of the second part, Sadie Hoffman, when it goes back to party of the first part, Mary Smith, if alive, if not to her heirs.

"[Signed and Sealed]

"MARY SMITH.
"SADIE HOFFMAN."

We believe further reference to the pleadings is unnecessary, as the court's findings clearly indicate the nature of the defense.

Trial was had in the district court in June, 1914, and special findings were made by a jury, but such findings were not adopted, and under date of January 5, 1917, the court made independent findings. To these findings, to the conclusions based thereon, and to the refusal of the court to adopt findings proposed by the plaintiff, and to other rulings on the trial, and to the order denying a motion for new trial, exceptions were taken and error predicated thereon in these appeals.

It appears that the Smith Bros. Sheep Company (hereinafter referred to as the company or corporation), was organized long prior to the commencement of this action, and that John M. Smith (husband of the plaintiff) was the principal stockholder and manager thereof. The testimony indicates very friendly relations, at all times prior to the initiation of the suit, between both parties, and between defendant and Mr. Smith during his lifetime, despite the fact that defendant obtained a divorce from her husband (plaintiff's brother) shortly after establishing a legal residence within the state. About the year 1896 Mrs. Hoffman, who was then living in the east, came to Montana and for many years thereafter, and

until the erection of the building hereafter referred to made her home with the Smiths. In 1902 the corporation purchased the lots in controversy, and erected thereon a lodging-house or hotel, known as the Hoffman House, partially at least furnishing the same. The defendant was put in charge of it as manager, upon its completion in 1903, under an agreement that she should operate the same and retain one-half the net proceeds, and turn over the other half to the corporation. The defendant contends that it was further agreed that when the half of the proceeds so turned over to the corporation should equal the amount of its investment in the premises, the property should be conveyed to her. This is denied by the plaintiff. No deed was ever made by the corporation to the defendant; but it appears that under date of August 23, 1906, the corporation for a consideration of $10,000 conveyed the premises to the plaintiff, and that, possibly, plaintiff acquired the title to prevent a sale by the corporation to some one other than defendant. This conveyance had not been placed of record at the time of the trial. Plaintiff's husband died in November, 1908.

In the summer of 1906, defendant left Lewistown, and was absent therefrom for some weeks, or possibly months. During her absence, believing that she did not intend to return, the property then bringing in but small returns, and being dissatisfied with defendant's management thereof, the company placed one Herman Brown in charge as manager. Upon her return, defendant was employed by the corporation as matron or housekeeper, under Brown, at an agreed compensation of $50, and, so far as appears from the record, did not assert, then or afterward, either to the corporation or this plaintiff, that her rights under the agreement had been violated. Some time thereafter an oral agreement was entered into for the rental of the property by defendant from plaintiff, and up to the date of the execution of the deed, March 14, 1910, defendant remained in possession of the property as plaintiff's tenant, paying Mrs. Smith rental therefor. On this last date, defend-

ant called upon plaintiff at her home in Pasadena, Cal., and informed her that defendant had to have money for the repairing of the house. Mrs. Smith stated that she was not in position to put any more money into the place, defendant then suggesting that plaintiff execute a deed (which defendant had caused to be prepared in Lewistown before going to Pasadena) for the premises, so that she could borrow money on the property for improving it. Mrs. Hoffman concedes that in part her object in going to Pasadena was to obtain a deed from plaintiff, so that she could raise money on the property for placing improvements thereon, and contends that she also thought she was entitled to a deed for the property because of the alleged agreement between herself and the corporation, though the record does not show that she asserted this claim to Mrs. Smith at this or any previous time. There was no direct testimony concerning their conversation and subsequent dealings, except that of the parties themselves.

Mrs. Smith testified that she looked over the deed, and that, as it did not express her wishes, she said to Mrs. Hoffman, "If I sign this deed, will you sign a contract with me?" and that defendant said, "I will do anything you ask," and that after further talk between them, the contract was prepared by plaintiff and signed by both. Plaintiff testified, on cross-examination, that the intention was that when Mrs. Hoffman had provided for Ollie (meaning Mrs. McNaught) "the house was to belong to her until she married or died. That was the understanding." Mrs. Hoffman testified that they talked over the situation of the estate of plaintiff's husband and the financial condition of Mrs. McNaught, and that plaintiff said she was unable to help her sister as she desired, until the affairs of the estate were settled, and that plaintiff said, "Will you send Olivia (Mrs. McNaught) $50 per month until I can make some other arrangement for her?" to which defendant says she assented, and that Mrs. Smith then said, "Well, I will give you the deed to the house; you have worked hard for it and earned it, and I want you to have it." This talk, she says, was had

both before and after the signing of the deed, though she testified that nothing was said about the signing of a contract until the following day. On cross-examination she said that the memorandum was to the same effect as the talk had between her and plaintiff, both before and after signing the deed. Following this talk, either on the same day and immediately before or after the signing of the deed (as contended by plaintiff), or on the next day (as contended by defendant), the memorandum referred to in the complaint was signed by both parties.

The testimony is that there was no consideration for the conveyance, except the agreement concerning the payments to be made to Mrs. McNaught. Defendant made payments to Mrs. McNaught of $50 per month, until after the receipt of Exhibit 1, in October, 1910.

Other letters were also written by plaintiff to defendant, but Exhibits 1 and 2 are the only ones we deem of importance as bearing upon the issues. The material portions of these letters follow:

### Exhibit No. 1.

"Oct. 9, (1910).

"Dear Sadie: * * * Now a little business dear. We signed a contract while you were in Calif. when I go back I will burn it up. You can have the Hoffman House, grounds and its furnishings, and when you are through with it, it can go to Mabel for I feel you have earned it. It will always give you a support should you lease it, when you get too (lazy) to run it not (too old). So you need make no other deed. * * * Sincerely,

"MARY M. SMITH."

### Exhibit No. 2.

"Sept. 17 (1911).

"Dear Sadie: Since I was there I know you can't do more than you are doing and I swear you shall have no more trouble coming, it will all be fixed up some way. I will give Mc. and Ollie a chance I will send them down on my place in Calif.

where they can root a hog or die. I have 320 acres of choice alfalfa land. I·will sell one-half, and they can run the other for half. They should do well, for you can raise anything. I intended to let it out for half, but instead I will give them the show. If it pays taxes and interest on the money for me, is all I ask. Now I want you to be happy and not worry, you shall have no more trouble if· I can help it, and I will try most mightily. I want you to have what you have earned by hard work and management. * * * Love to you, my dear, and success.

"MARY."

In addition to this correspondence, it appears that plaintiff on several occasions asked Mrs. Hoffman to send money to Mrs. McNaught, and that Mrs. Hoffman said she did not have it to send.

The testimony further shows that Mrs. Hoffman, after acquiring the deed, did not borrow money upon the property for the purpose of repairing or furnishing the same, but that in 1913 she mortgaged the premises, the proceeds being used by her to purchase land near her homestead in the country and none for improving the hotel property. She did, however, pay out considerable money in repairing the property and in refurnishing the same, the money for the cost thereof being derived from the proceeds of the business.

The record is voluminous, but the foregoing is a summary of the·testimony bearing upon the material issues, though additional references will be made to other portions in considering the findings.

The rule is well settled by numerous decisions of this court [1] that the findings of a district court will not be reversed except where the evidence clearly preponderates against them, and citation of such authorities is not necessary herein.

The trial court found that it was agreed between the defendant and the company that when the defendant should have paid the company a sum equal to the cost of the premises and furnishings, title would pass to the defendant; that plaintiff

was familiar with the terms of this agreement, and, with full knowledge thereof, purchased the premises; and that pursuant thereto plaintiff leased the property to the defendant, receiving rents from the defendant until March 14, 1910; but that the sums so paid "were not paid strictly as rental, but more in the nature of compensation in accordance with the said original understanding which plaintiff was endeavoring to carry out."

Even if the theory of the defendant should be sustained as to the original agreement between her and the corporation, her own testimony shows an abandonment of the agreement, whatever it may have been, in accepting employment on a monthly salary without complaint after she had been supplanted as manager, and later recognizing plaintiff's title by leasing the property from her in 1906 and continuing as her tenant from that time until the execution of the deed, Exhibit "A" on March 14, 1910.

In our opinion, the evidence clearly preponderates against these findings of the trial court.

The court found that on the day of the execution of said [2] deed, and on the following day, plaintiff and defendant discussed the situation of plaintiff and Mrs. McNaught, and that plaintiff requested defendant to pay Mrs. McNaught $50 per month until the plaintiff could make other provision for her, and that the defendant promised to make such payments, and that on the day following the execution of the deed, the parties entered into the memorandum or contract, but that the execution of the deed and the making of the said memorandum were separate transactions, and that the making of the memorandum was not the consideration for the execution of the deed, nor was it intended as a condition or limitation, nor did it create a trust, upon the property, but was a personal and independent contract to convenience the plaintiff in temporarily caring for Mrs. McNaught and to obviate trouble with the company and the heirs of the estate of plaintiff's husband; and that the deed was executed and delivered as one of the

steps in completing the agreement, heretofore referred to, between the corporation and the defendant.

The court determined that by the letters of October 9, 1910, and September 17, 1911, the memorandum or contract was canceled and revoked, and that the defendant was justified in believing the "unlimited time" contemplated by said memorandum had expired, and that defendant was under no further obligation thereunder to Mrs. McNaught, even though the memorandum was not actually destroyed; that after the writing of said Exhibit 1, plaintiff requested defendant to continue the payments to Mrs. McNaught, and that defendant failed to comply therewith, but that such requests were made, not because plaintiff believed there was any obligation to comply therewith, but because of pressure upon plaintiff by some person or persons.

Our Code, section 5031, provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

In *Talbott* v. *Heinze*, 25 Mont. 4, 63 Pac. 624, this court held that contracts dated on September 26, and a note dated October 21 of the same year, "relating to the same matters, were between the same parties, were made as parts of substantially one transaction, and * * * should be taken together as one contract." (See, also, *Lyon* v. *Dailey Copper Co.*, 46 Mont. 108, 126 Pac. 931; *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Bartels* v. *Davis*, 34 Mont. 285, 85 Pac. 1027; *Ford* v. *Drake*, 46 Mont. 314, 127 Pac. 1019; *Dodd* v. *Vucovich*, 38 Mont. 188, 99 Pac. 296.)

The evidence clearly shows that the matters referred to in the memorandum or contract were fully discussed by the parties, both before and after the signing of the deed, and defendant herself admitted that the contract was to the same effect as the conversation had. In view of the statute, what we consider the weight of authority, and the testimony as to the conversation leading up to the signing of the memorandum,

and the terms of the memorandum itself, we deem it as conclusively established that the two writings constitute but one transaction, regardless of whether they were executed on the same day or otherwise.

This, then, brings us to the question whether the provisions [3] of the memorandum contract constitute limitations or conditions upon the deed.

Our Code defines a condition subsequent as follows: "Sec. 4902. A condition subsequent is one referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition."

In the case of *Barker* v. *Cobb,* 36 N. H. 344, the grantor conveyed land by warranty deed to certain of his children. On the back of the deed, and not embraced therein, was an additional writing, in effect as follows: "The conditions of the within deed are such that if the within named [grantee] shall well and truly * * * provide" support for grantor and wife "then the within deed to be good and valid, otherwise null and void."' The court, in construing the same, stated: "The deed conveyed * * * an estate upon condition; for although the condition was not contained in the body of the deed, yet, being upon the same paper and executed at the same time, the intent of the parties appears plain. There was but one contract and, in legal effect, but one instrument. By the condition of the conveyance the grantee was to provide for and support [the grantor] and his wife during their natural lives. Otherwise the deed was to be null and void. In a deed of this kind, though an estate be conveyed, yet it passes to the grantee subject to the condition." (See, also, *Munson* v. *Munson,* 24 Conn. 115.)

In *Glocke* v. *Glocke,* 113 Wis. 305, 57 L. R. A. 459, 89 N. W. 118, there was an absolute conveyance by deed. By separate instruments made at the same time it was provided that the grantee should pay yearly certain articles for the support of

the grantor, mother of the grantee. The provision was held to be a condition subsequent.

In *Gall* v. *Gall*, 126 Wis. 390, 5 L. R. A. (n. s.) 603, 105 N. W. 953, the court said: "The conveyance of the premises, * * * in consideration of support, maintenance, medical treatment, * * * and a home upon the premises conveyed, created an estate upon condition subsequent, subject to be defeated upon the nonperformance of such condition." (See, also, 2 Devlin on Deeds, p. 1823; *Horner* v. *Chicago, M. & St. Paul Ry. Co.*, 38 Wis. 165; *Blake* v. *Blake*, 56 Wis. 392, 14 N. W. 173; *Houston* v. *Greiner*, 73 Or. 304, 144 Pac. 135.)

Our Code further provides: "Sec. 4623. When a grant is made upon condition subsequent, and is subsequently defeated by the nonperformance of the condition, the person otherwise entitled to hold under the grant must reconvey the property to the grantor or his successors by grant, duly acknowledged for record."

Under all the circumstances and the weight of authority, we deem the deed to have been made upon a condition subsequent imposed by the memorandum contract, and that upon a breach of such condition the plaintiff would become entitled to a rescission or cancellation, unless there was a waiver of the condition.

The plaintiff contends that there has been an absolute breach of the condition, and that she is entitled to the relief prayed for, and asserts that the letters in question, having no consideration to support them, did not relieve the defendant from the obligations imposed by the contract. Defendant, on the other hand, claims a full compliance with the terms of the contract, and that she has been relieved from further compliance by the letters, and, even if not so relieved, that plaintiff has waived her right to declare a forfeiture.

In *Hubbard* v. *Hubbard*, 12 Allen (Mass.), 586, one of the conditions in the deed was that the grantor and his wife should be allowed to reside on the homestead during their respective natural lives, in return for which the grantees promised sup-

port. Action was brought to determine the estate for a breach
of this condition. The trial court held for the grantees. The
supreme court granted a new trial, on the theory that the evi-
dence showed a breach of the conditions. The case again went
to the supreme court, and as reported in 97 Mass. 188, 93 Am.
Dec. 75, on the second appeal, the court said: "It was held in
this case, when it was before us at a previous term, that the
condition in the demandant's deed to the tenant had been
broken, and that the estate was forfeited. On a new trial, the
tenant relied upon a waiver of the breach and forfeiture, and
we are of opinion that the rulings at the trial were right, and
that the defense was maintained. It is optional with the grantor
of an estate upon condition, in case a breach of the condition
occurs, whether he will avail himself of the same as a forfeiture
of the estate thus granted. To do this requires action on his
part. * * * It is equally well settled that a mere breach
of condition will not revest an estate in a grantor upon condi-
tion, except at his election; and that he may waive the breach
and forfeiture. (Co. Litt. 211; *Coon* v. *Brickett,* 2 N. H. 163;
1 Shep. Touchstone, 153; *Pennant's Case,* 3 Co. 64.)"

In *Harwood* v. *Shoe,* 141 N. C. 161, 53 S. E. 616, an action
involving the failure of a grantee to carry out his contract of
maintenance, the court held: "Where the failure * * * to
carry out his contract * * * was due to the acts and con-
duct of the heirs at law of the grantor, they cannot profit by
their wrongful acts," and "one who prevents the performance
of a condition, or makes it impossible by his own act, will not
be permitted to take advantage of the nonperformance."

In *McCue* v. *Barrett,* 99 Minn. 352, 109 N. W. 594, the court
held: "Conditions subsequent are to be strictly construed and
taken most strongly against the grantor to prevent a forfeiture
of the estate. A forfeiture for a breach of a condition subse-
quent may be waived by acts as well as by express agreement,
and, once waived, the grantor can never take advantage of it,
but mere silence of the grantor after the breach is not sufficient
to constitute a waiver of forfeiture. A waiver, however, may

result from the failure of the grantor for an unreasonable time to act after knowledge of the breach, or where he consents to the breach"—citing 13 Cyc. 689, 708, and numerous cases. (See, also, *Barrie* v. *Smith,* 47 Mich. 130, 10 N. W. 168; *McWhorter* v. *Heltzell,* 124 Ind. 129, 24 N. E. 743.)

In *Sharon Iron Co.* v. *City of Erie,* 41 Pa. 341, the court said: "A condition that destroys an estate is to be taken strictly, and it is established law that a condition once dispensed with, in the whole or in part, is dispensed with forever. * * * The doctrine that a forfeiture may be waived by the party who has the right to avail himself of the breach of a condition, and that he may do this by acts as well as by express agreement, is a familiar one."

The rule laid down by Washburn on Real Property, 6th ed., 951 *et seq.,* which is cited with approval by many authorities, is as follows: "A forfeiture may be saved though a condition may have been broken, if the party who has the right to avail himself of the same waives this right, which he may do by acts as well as by an express agreement." (*Bredell* v. *Westminster College,* 242 Mo. 317, 147 S. W. 105; *Huntley* v. *McBrayer,* 172 N. C. 642, 90 S. E. 754; 13 Cyc. 706.)

In *Jones* v. *Williams,* 132 Ga. 782, 64 S. E. 1081, the court said: "The law inclines to construe conditions subsequent so as to render their breach remediable in damages rather than by forfeiture; but where the plain words of the grant declare that a breach of the condition shall defeat the estate granted, there is no room for construction. No precise technical words are required to create a condition subsequent, and the construction must always be founded upon the intention of the parties as disclosed in the conveyance. * * * The clause of the deed construed by the court in the instruction to which exception is taken created a condition subsequent, upon the breach of which the grantor, at his election, could have availed himself of the forfeiture. If the grandfather relieved the granddaughter from the obligation of caring for him, after she left his home, or if it was through his fault that she failed to continue her services,

he could not claim a forfeiture from a failure to comply with the condition. As was said in *Moss* v. *Chappell,* 126 Ga. 196, 54 S. E. 968 [11 L. R. A. (n. s.) 398], 'forfeitures resulting from the breach of a condition may be expressly released, or may be the subject of a waiver, and a waiver may result from circumstances as well as express language to that effect. All this is well settled; and, where the release or waiver extends to . the whole forfeiture, of course all benefit to be derived from the forfeiture is gone.' " (See, also, *Bain* v. *Parker,* 77 Ark. 168, 90 S. W. 1000, and cases there cited; *Carbon Block Coal Co.* v. *Murphy,* 101 Ind. 115; *Vicksburg, etc.,* v. *Ragsdale,* 54 Miss. 200; *Brown* v. *Wrightman,* 5 Cal. App. 391, 90 Pac. 467.)

The great weight of authority sustains the proposition that a condition involving a forfeiture may be waived, and likewise [4, 5] that a provision constituting a forfeiture must be strictly construed against the party for whose benefit it is created. Besides, our statute, section 4906 of the Revised Codes, provides: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (See *Finley* v. *School District,* 51 Mont. 411, 153 Pac. 1010.)

Such being the case, and giving to Mrs. Smith's letters the interpretation which we think their language requires, we feel that, so far as this proceeding is concerned, Mrs. Hoffman was justified in treating the letters referred to as relieving her from the necessity of making any further payments to Mrs. McNaught.

While Mrs. Smith says that she came to Montana from California every year, and while in Lewistown on each trip talked to the defendant about the money due Mrs. McNaught, the last definite conversation fixed by the testimony was one in the fall of 1911, prior to the seventeenth day of September, at the homestead of the defendant at which Mrs. Hoffman expressed her inability to pay further. Following this conversation, Exhibit 2 was written by plaintiff to defendant. It must be assumed that Mrs. Smith had that conversation in mind when she said, in the letter of September 17, 1911: "Since I was there I know that you can't do more than you are doing and I swear you

shall have no more trouble coming. It will all be fixed up some way. * * * Now I want you to be happy and not worry. You shall have no more trouble if I can help it and I will try most mightily. I want you to have what you have earned by hard work and management."

Even if we disregard the letter of October 9, 1910, the defendant was justified in assuming that plaintiff, in the letter of September 17, 1911, intended what she there said. It would certainly be unjust to penalize defendant for the nonperformance of that which the plaintiff herself had said she would excuse. Certainly, so far as this action is concerned, defendant had a right to rely on these statements.

The whole case is barren of acts of fraud, and no attempt [6] is made by either party to suggest actual fraud on the part of the other. It is simply one of those instances in which a party has made a contract impulsively or out of generosity, not based upon business principles, which has caused dissension when scrutinized and criticised by business associates and relatives. But the parties have made the situation, and we are not responsible therefor.

The point is made that the letters, in order to be binding or cognizable at law or in equity, must be founded upon a consideration, or the promises or agreements therein must have been fully executed. This is not an action in damages. Whether the letters release defendant from damages because of her failure to make the payments in question is not a matter to be passed upon here. In a proceeding involving that question, the effect of letters or promises not based upon a consideration might perhaps be considered. But the rule is well [7] established that where the acts or conduct of a party are such as to estop him from insisting upon the right claimed to have been relinquished, no consideration is necessary. (40 Cyc. 264, and cases cited.) In the cases heretofore referred to it will be found that in practically all of them the waivers adverted to were without consideration.

We hold that plaintiff by her acts and conduct waived the right to declare a forfeiture.

The defendant contends that the letters from plaintiff to her [8] not only constitute a waiver of plaintiff's right to declare a forfeiture, but also in effect that, the provision for support of Mrs. McNaught having been lost or waived, even if the deed was made upon condition, the memorandum contract is extinguished, and the deed should be treated as conveying a fee-simple title to defendant. Holding, as we do, that the contract and deed were but one transaction, it needs no citation of authority to sustain the conclusion that at the time of the execution of the papers the estate conveyed was but a life estate, or one determinable upon defendant's remarriage, with reversion in favor of plaintiff or her heirs. There was no consideration for the letters. Their terms do not permit the construction that they amount to a conveyance of the fee. (*Phillips* v. *Swank*, 120 Pa. 76, 6 Am. St. Rep. 691, 13 Atl. 712; *In re Goetz Estate*, 13 Cal. App. 198, 109 Pac. 145; *Bank* v. *Rice*, 4 How. 225, 226, 11 L. Ed. 949; *Adams* v. *Reed*, 11 Utah, 480, 40 Pac. 724.) The situation as to the title has not changed since the execution and delivery of the deed and contract. Plaintiff should have decree in accordance herewith.

The judgment is reversed, and the cause remanded to the district court, with directions that judgment and decree be made therein, that defendant's title constitute a life estate, unless the defendant remarry, in which event her estate shall terminate, with reversion to plaintiff, her heirs or assigns.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, PATTEN and COOPER, concur.